# PECHMAN LAW GROUP PLLC
### ATTORNEYS AT LAW

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

December 21, 2020

**VIA ECF**

Honorable Gary R. Brown
United States District Court
100 Federal Plaza
Central Islip, New York 11722

      Re:  *Hernandez v. MJS Cohen Inc. et al.*
           20 Civ. 2473 (GRB) (AKT)

Dear Judge Brown:

    We represent Plaintiff Jose Hernandez ("Hernandez") in the above-captioned matter, and submit this letter-motion jointly with counsel for Defendants MJS Cohen Inc. d/b/a Prime Bistro and Raphy Bitton (collectively "Defendants") to request that the Court approve the attached negotiated Settlement Agreement and Release (the "Agreement") (Ex. 1)[1] pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) as a fair and reasonable compromise of this FLSA action.

## FACTUAL AND PROCEDURAL HISTORY

    On June 3, 2020, Hernandez, through his counsel, Pechman Law Group PLLC ("PLG"), commenced this Action against Defendants by filing a complaint (the "Complaint") in the United States District Court, Eastern District of New York (the "Court"), Docket No. 2:20-cv-02473 (GRB) (AKT) (the "Action") (ECF No. 1).

    Through his Complaint, Hernandez—a former dishwasher and cook at Prime Bistro—alleged that throughout his employment, he was paid a weekly salary that failed to compensate him for hours worked in excess of forty per workweek at a rate of 1.5 times his regular hourly rate, as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Hernandez also alleged that: (1) he was not provided with spread-of-hours pay on days when he worked shifts in excess of ten hours as required by the NYLL; (2) was not provided with wage notices when his wage rate changed; and (3) was not provided with accurate wage statements with each payment of wages as required by the NYLL's Wage Theft Prevention Act ("WTPA"). Hernandez sought to recover his unpaid overtime and spread-of-hours wages, liquidated damages, statutory damages

---

[1] Exhibits to this letter-motion are referred to by their corresponding exhibit number. Exhibits to the Parties' Agreement are referred to by their corresponding exhibit letter.

based on the alleged WTPA violations, pre- and post-judgment interest, and attorneys' fees and costs.

Defendants filed their Answer on August 14, 2020, denying the allegations made in Hernandez's Complaint and asserting various defenses. (ECF No. 11). The Parties submitted a discovery plan, and an initial conference was held before Judge Tomlinson on September 3, 2020. During the initial conference, the Parties agreed to engage in a mediation in an attempt to resolve their dispute, and Judge Tomlinson subsequently entered a mediation referral order (ECF No 16).

Although formal discovery was not undertaken in this case, the Parties exchanged all relevant existing documentation during prelitigation negotiations, such that they were prepared to effectively mediate their dispute. The document exchange included payroll records and timecards from 2018 forward and wage notices from 2013 forward.[2] The Parties participated in a mediation with EDNY mediator Andrew Kimler, Esq., on December 1, 2020. Defendants continued to deny Hernandez's allegations, maintaining that Hernandez was paid on an hourly basis with appropriate overtime compensation and received additional pay in the form of house bonuses. Following a four-and-one-half-hour mediation session, the Parties reached an agreement to resolve Hernandez's claims for the total sum of $75,000.00. The Parties now jointly request that the Court approve their Agreement as a fair and reasonable resolution of a bona fide FLSA dispute.

## THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. In considering the fairness of a proposed settlement, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Siler v. Landry's Seafood House - N. Carolina, Inc.*, No. 13-CV-587 RLE, 2014 WL 2945796, at *7 (S.D.N.Y. June 30, 2014) (citation omitted). Where "the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (quoting *Siler*, 2014 WL 2945796 at *7). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length

---

[2] Defendants indicated that certain payroll records had been stolen and thus were unavailable for review.

>    bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The Parties believe the settlement here is fair and reasonable under these factors.

## I. The Parties' Agreement is Fair and Avoids Litigation Risks

The Parties' Agreement requires Defendants to pay a total sum of $75,000.00 to resolve this Action without any admission of liability, with an initial payment of $25,000.00 by January 2, 2021 and seven equal monthly installments thereafter. (Ex. 1 at § 1). After deduction of attorneys' fees and costs, Hernandez will receive $49,480.62. (*Id.* at § 1(a)(i)).

Hernandez's counsel calculated his alleged damages based largely on Hernandez's recollection of hours worked and pay received, with reference to the limited payroll documents available for review. Specifically, Hernandez's alleged damages were calculated based on Hernandez's claim that he regularly worked twelve-hour shifts, five days per week for a total of approximately sixty hours per workweek during the period from 2014 to July 2019, and was paid a weekly salary of $650.00 in 2014 and 2015, $700.00 from 2016 to mid-2018, and $900 from mid-2018 to the end of his employment. In light of these allegations, Hernandez's counsel relied on the NYLL's Hospitality Wage Order ("HWO")—which provides that an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week," 12 NYCRR § 146-3.5—to calculate Hernandez's regular and overtime wage rates and overtime wage damages. Because the HWO presumes that an employee's weekly salary compensates him for only the first forty hours worked per workweek, Hernandez's wage damages were calculated as $160,671.20. Hernandez's total damages as calculated by his counsel also included an equal amount in liquidated damages under the NYLL, $10,000 in statutory damages based on the alleged WTPA violations, and pre-judgment interest.

Throughout this litigation, Defendants have vigorously contested Hernandez's allegations with respect to his method of pay. Defendants maintain that Hernandez was not paid a weekly salary, but was paid hourly and overtime wages at the required statutory rates, was paid spread of hours pay, and received additional compensation in the form of house bonuses. Defendants pointed to WTPA notices and timecards signed by Hernandez indicating hourly and overtime wage rates in support of their position, and contended that with the purported house bonuses provided, Hernandez was in fact paid in excess of the statutory wage requirements.

Under the Agreement reached by the Parties, Hernandez will receive approximately 31% of his alleged unpaid wages, as calculated by Hernandez's counsel *based on Hernandez's own recollections and application of the HWO's forty-hour presumption*. Importantly, the Parties' Agreement permits Hernandez to avoid serious risks attendant with continued litigation. Although certain documentary evidence exists to support Hernandez's position—in particular payroll records indicating that Hernandez normally

Hon. Gary R. Brown
December 21, 2020
Page 4

received $900 in weekly pay from mid-2019 to the end of his employment—other evidence in this case may be used to rebut Hernandez's contention that he was paid on a salary basis. Specifically, wage notices and timecards signed by Hernandez suggest that he was paid on an hourly basis. The credibility of any conflicting testimonial evidence regarding pay and hours worked by Hernandez and Mr. Bitton must be weighed by a trier-of-fact. If Defendants were able to successfully establish that Hernandez was paid on an hourly basis with appropriate overtime pay for hours worked over forty per week, Hernandez risks a near total loss of recovery. Accordingly, the Parties' Agreement represents a reasonable compromise over *bona fide* and sharply contested disputes.

Moreover, absent their Agreement, the Parties would have to proceed through costly depositions, draining resources that Defendants have agreed to put towards the resolution of the Action. Hernandez would not see recovery in this case until after depositions, a trial, and appeals—and then only if he were to prevail at trial and on appeal. Under the Agreement, Defendants will make an initial payment of $25,000.00 by January 2, 2021, and equal monthly installments for seven months thereafter. Hernandez is further protected by the requirement that Mr. Bitton execute a Confession of Judgment, which Hernandez may file in the event of an uncured default on payments by Defendants (Ex. 1 at § 10), and by Defendants' agreement to a $50,000 penalty in the event of an uncured default on payments. (*Id* at § 11).

In light of the above, the Parties respectfully request that the Court find that their Agreement is a fair and reasonable compromise of a bona fide FLSA dispute.

## II.     The Allocation of Attorneys' Fees and Costs is Reasonable

Hernandez's counsel has spent significant time investigating the factual and legal issues raised in this Action, preparing Hernandez's Complaint, engaging in outreach with Defendants' counsel, reviewing records provided by Defendants, and preparing for and engaging in mediation efforts. Hernandez's counsel has used its experience in litigating wage-and-hour disputes to provide a satisfactory result for Hernandez. In accordance with Hernandez's retainer agreement, attorneys' fees in this case are $24,740.27, equivalent to one-third of the total recovery after reimbursement of costs. Costs in this Action total $779.11, and include: (1) $16.61 in FedEx costs for demand letter shipment; (2) the $400.00 filing fee; and (3) a $362.50 mediation fee.[3]

The contingency fee in this case should be approved because it is the fee Hernandez agreed upon in his retainer agreement. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). Moreover, the one-third contingency is the fee which courts consider to be presumptively valid in FLSA cases. *See, e.g.*, *Oxley v. Excellent Home Care Servs., LLC*, No. 18-CV-2374 (RJD)(CLP), 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) ("Settlements of a one-third percentage are typically found

---

[3] A copy of PLG's contemporaneous expense and billing records are attached as Exhibit 2.

reasonable in this Circuit"); *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334 (RA), 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) ("A contingency fee award is presumptively valid where the proposed fee amount is exactly one-third of the net settlement amount[.]") (internal quotation and quotation marks omitted); *Marquez v. Roberto's Rest. Corp.*, No. 16-CV-2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. Nov. 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) ("A one-third contingency fee is a commonly accepted fee in this Circuit.") (internal citations omitted).

Although PLG's lodestar of $22,161.89 to date in this matter is slightly less than the contingency fee, the award is fair and reasonable in light of the result obtained and the "considerable risk" PLG undertakes by representing plaintiffs in FLSA cases on a contingency fee basis. *See, e.g., Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *9 (S.D.N.Y. June 20, 2016) (noting risks associated with contingent fees in FLSA cases) (collecting cases).[4] The lodestar multiplier of 1.12 is also comfortably within the range that courts in this Circuit regularly approve in contingency fee cases. *See, e.g., Lesser v. TIAA Bank, FSB*, No. 19-CV-1707 (BCM), 2020 WL 6151317, at *4 (S.D.N.Y. Oct. 20, 2020) ("[W]hen analyzing the fairness of a fee award under *Cheeks*, courts in this district will often approve lodestar multipliers between two and four times.") (quotation and internal quotation marks omitted); *Valencia v. Nassau Country Club*, No. 18-CV-2724 (LDH) (JO), 2020 WL 7249440, at *2 (E.D.N.Y. Oct. 19, 2020) ("[C]ourts approving the settlement of FLSA claims in this district often approve fee allocations that represent up to twice the reasonable lodestar or even more.") (citations omitted). As such, the contingency fee in this case is fair and reasonable, and should be approved.

### III. The Agreement Satisfies All Other Factors Considered for Approval

The terms of the Agreement are otherwise consistent with *Cheeks*. The Agreement was reached following arm's-length negotiations between capable counsel and with the aid of a court-annexed mediator. Plaintiff's release is limited to wage-and-hour claims, and the Agreement does not contain a confidentiality provision. Further, the Agreement contains provisions that help to ensure that Defendants pay the Settlement Amount, including a requirement that Mr. Bitton execute a Confessions of Judgment and a request

---

[4] In this regard, PLG notes contingency awards sometimes represent only a fraction of its lodestar, and PLG is sometimes unable to collect fees awarded. *See, e.g., Santana v. El Conde Steakhouse Corp.*, No. 12-CV-8392 (VSB), at *3 (S.D.N.Y. Nov. 24, 2015) (approving attorneys' fees of $23,332, which represents "significantly less than the $78,870.50 Plaintiffs' attorneys would be due under the lodestar"); *Valdovinos v. Spunky Rest. Corp.*, No. 14-CV-3606 (KPF) (DCF) (S.D.N.Y. 2015) (default on settlement agreement resulted in no attorneys' fees where lodestar was $28,319.20); *Augusto Corrales v. AJMM Trucking Corp.*, No. 19-CV-4532 (LJL), 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020) (PLG to date has not recovered any of the $16,292.38 attorneys' fee awarded on default judgment); *Zavala v. JT Restaurant Corp. et al.*, No. 18-CV-01530 (ADS) (ARL) (E.D.N.Y. Apr. 22, 2020) ($35,000 judgment remains outstanding following defendants' default on payments under settlement agreement); *Hussain v. Burton and Doyle of Great Neck, LLC*, No. 14-CV-05924 (SIL) (E.D.N.Y. June 16, 2020) (after almost six years of litigation including a seven-day jury trial, attorneys' fee award of $275,000 uncollectible due to personal and business bankruptcy).

Hon. Gary R. Brown
December 21, 2020
Page 6

that the Court retain jurisdiction over this Action for purposes of enforcing the Agreement's terms.

## CONCLUSION

The Parties agree that the Agreement is fair and reasonable and should be approved by the Court. This settlement will enable the Parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses in further litigation. Continuing through pending discovery and trial would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter. A proposed stipulation and order of dismissal executed by the Parties is attached to the Parties' Agreement as Exhibit A.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

*s/ Galen C. Baynes*

Galen C. Baynes

cc: Counsel of Record (via ECF)

Attachments